**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| JAMES B. HENDERSON, IV,<br>Appellant, | DOCKET NUMBER<br>DA-0752-14-0209-I-1 |
| v. | |
| DEPARTMENT OF<br>TRANSPORTATION,<br>Agency. | DATE: March 13, 2015 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[*]

<u>Bobby Devadoss</u>, Esquire, Dallas, Texas, for the appellant.

<u>Raymond Martinez</u>, Fort Worth, Texas, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1    The appellant has filed a petition for review of the initial decision, which affirmed his removal. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the

---

[*] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order concerning the appellant's whistleblowing claim, we AFFIRM the initial decision.

¶2    The agency removed the appellant on three charges: (1) providing false information on government records; (2) providing a false statement; and (3) failure to follow instructions. Initial Appeal File (IAF), Tab 5, Subtabs 4b, 4d. The deciding official declined to sustain the agency's fourth charge, improper conduct. *Id.* Most of the charged misconduct involves the appellant's actions on the morning of November 15, 2012. *See* IAF, Tab 5, Subtab 4d. The appellant's supervisor recounted in a sworn statement that, after he learned that the appellant was on his way to the airport in Victoria, Texas, that morning in order to perform preventative maintenance, instead of attending a previously scheduled mandatory training session at the Houston office, he personally instructed the appellant to continue to Victoria and to perform the maintenance rather than to immediately turn around and return to the office for the training. *Id.*, Subtab 4*l* at 8-9. According to the supervisor, the appellant returned to the office much sooner than he would have had he followed those instructions and was then evasive when asked about the events of that day in a December 11, 2012 meeting. *Id.* The agency subsequently conducted an investigation, *id*, Subtabs 4*l*-4m, which led to the instant action, *id.*, Subtabs 4b-4d.

¶3    The appellant filed a timely appeal and requested a decision on the written record. IAF, Tabs 1, 12. After receiving the parties' close of record submissions, the administrative judge affirmed the agency's action. IAF, Tab 21, Initial Decision (ID). On the first charge, the administrative judge found that the agency established by preponderant evidence that the appellant provided false information on government records when he made seven entries in the agency's Simplified Automated Logging system regarding his presence, and the periodic maintenance he allegedly performed, at the airport in Victoria on November 15, 2012. ID at 2-8. On the second charge, the administrative judge determined that the agency established that the appellant made three false statements on March 6, 2013, regarding his performing maintenance at the airport in Victoria on November 15, 2012. ID at 8-10. On the third charge, the administrative judge found that the agency established that the appellant failed to follow his manager's November 15, 2012 instruction set forth above, as well as his October 30, 2013 instruction to the appellant to reassemble an emergency light fixture. ID at 10-11. The administrative judge also found that the appellant failed to establish his affirmative defenses of discrimination and reprisal for protected equal employment opportunity (EEO) and whistleblowing activity and that the appellant's removal was both reasonable under the circumstances and promoted the efficiency of the service. ID at 12-21.

¶4    In his petition for review, the appellant first contends that the administrative judge did not consider his affidavit, which he claims, contrary to the administrative judge's finding, *see* ID at 11, that he signed under oath before a notary, Petition for Review (PFR) File, Tab 1 at 4. He also contends that the administrative judge incorrectly concluded that he violated the agency's maintenance orders, arguing that he did not falsely report his presence at the airport in Victoria on November 15, 2012, because the maintenance handbook allows technicians working on multiple facilities at one location to choose one of those facilities at which to capture their arrival and departure times such that

technicians are not required to be physically present at the facility where the maintenance is performed. *Id.* He also argues, as he did below, that he did not misrepresent the maintenance tasks he performed that day because he performed them in keeping with past practice by calling the air traffic controller at Victoria, who then called an incoming pilot, in order to verify that the approach lights in question were operating. *Id.* at 4-5; *see* ID at 8; IAF, Tab 5, Subtab 4*l* at 64-65, 74-75. Regarding his alleged failure to follow his supervisor's instructions in October 2013to repair a light fixture, the appellant argues that the administrative judge failed to consider medical documents showing that he suffered an electrical shock when reassembling the fixture. PFR File, Tab 1 at 4. Lastly, the appellant argues, again as he did below, that the agency's action is the result of whistleblowing and EEO activity reprisal. *Id.* at 5. The agency responds in opposition. PFR File, Tab 3.

¶5    We find that the administrative judge was correct in holding that the "affidavit" which the appellant submitted in response to the affirmative defense order was not sworn. *See* IAF, Tab 9 at 6-15; ID at 11. However, the appellant submitted another affidavit at the close of the record to which he swore before a notary. IAF, Tab 18 at 12-23. The administrative judge did not address this affidavit in the initial decision. Nevertheless, because the appellant did not request a hearing and there are no issues before us regarding the administrative judge's credibility findings, we consider it now on review. For the following reasons, we find that the appellant's affidavit does not demonstrate that the administrative judge erred in sustaining the agency's charges.

¶6    In the appellant's sworn May 2014 affidavit, he offers a fairly detailed explanation of how he could have performed the periodic maintenance tasks at the Victoria airport without actually being present at the facility and why he therefore did not provide any false information or make any false statements about his performance of those tasks. IAF, Tab 18 at 13-19. Importantly, the appellant essentially conceded therein that he did not go to Victoria as his supervisor

instructed, stating that "I never stated to anyone that I was physically present in flesh and blood at this particular facility in Victoria." *Id.* at 19. The appellant also conceded in his April 2014 response to the affirmative defense order that he did not follow his supervisor's instructions to continue to Victoria and that he misled the agency about the maintenance he performed. IAF, Tab 9 at 8. Specifically, the appellant admitted that on the morning in question he "attempted to complete my assigned maintenance and at the same time comply with my supervisor's assignment of mandatory training." *Id.* He also stated that he "forgot about the training class and in an attempt to make amends, made some bad decisions and may have revealed some misunderstanding of the maintenance handbook but there was never intent to falsify records or mislead the agency." *Id.* When we compare the appellant's April and May 2014 assertions with his contemporaneous December 11, 2012 statement that he could not recall whether he actually went to Victoria and exactly what maintenance he performed there on November 15, 2012, IAF, Tab 5, Subtab 4*l* at 35-38, as well as with his March 6, 2013 statement that he indeed did go to Victoria that day, and that he "completed the maintenance and logged it into the computer[,]" *id.* at 64-65, it is clear that the appellant has made a series of inconsistent statements.

¶7        The chronology of events, especially considering the appellant's initial inability to recall and his subsequently shifting explanations of his actions, provide circumstantial but clearly preponderant evidence of his intent to mislead the agency for his own personal gain. *See, e.g.*, *Boo v. Department of Homeland Security*, [122 M.S.P.R. 100](#), ¶¶ 10-13 (2014) (considering the entirety of the circumstances, including the appellant's otherwise plausible explanation of the events, the intent to deceive may be inferred from circumstantial evidence indicating an effort to hide or obscure facts in order to prevent the agency from taking disciplinary action).

¶8        The appellant also claims on review that the administrative judge should have considered his medical evidence on whether he followed his supervisor's

instructions, referenced in the second specification of the third charge, to repair the light fixture on October 30, 2013. PFR File, Tab 1 at 4. He argued below that he attempted to comply with his supervisor's instructions to repair the light fixture on October 31, 2013, but that he was injured in the process. IAF, Tab 18 at 20. He provided documentation indicating that he was treated for electrical shock on October 31, 2013. IAF, Tab 19 at 18-22. The record also contains the agency's report on the electrical shock, which states that, because the circuit breaker was turned off at the time, the maximum shock the appellant could have received was 11.2 volts from the backup battery pack. *Id*. at 31. Nevertheless, the specification indicates that the appellant was instructed to repair the light fixture on October 30, not October 31. IAF, Tab 5, Subtab 4d at 4. In an affidavit, the appellant's supervisor similarly indicated that he asked the appellant to repair the light fixture on October 30, but the appellant refused to do so. IAF, Tab 16 at 20. Consistent with this information, the supervisor wrote in an October 30, 2013 Memorandum that he specifically told the appellant early that afternoon that he was to "re-assemble the emergency light fixture . . . before he worked on anything else" and the appellant did not do so. IAF, Tab 5, Subtab 4h.

¶9        Although the administrative judge does not mention the medical evidence, that does not mean that he failed to consider it. *See Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984) (the administrative judge's failure to mention all of the evidence of record does not mean that he did not consider it in reaching his decision), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). Because the appellant's medical evidence indicates that his electrical shock occurred on October 31, it does not address his failure to follow his supervisor's instructions to repair the light fixture on October 30. IAF, Tab 19 at 18-22. We therefore agree with the administrative judge that the weight of the evidence indicates that the appellant did not reassemble the light fixture as instructed by his supervisor. ID at 11.

¶10      Regarding his affirmative defenses, the appellant argues on review, as he did below, that his removal was effected in reprisal for his whistleblowing and EEO activities. PFR File, Tab 1 at 5; IAF, Tab 9. He does not challenge the administrative judge's adjudication of his discrimination claim, *see* ID at 12-13, and we agree with the administrative judge's disposition of that claim. In rejecting the appellant's claims of reprisal, the administrative judge found that the record did not contain any evidence that the appellant engaged in protected EEO activity, and we also agree with the administrative judge's finding that the appellant failed to establish his claim of reprisal for protected EEO activity. ID at 12-13.

¶11      Regarding the appellant's whistleblowing claims, the administrative judge found that the appellant made protected disclosures in March 2011 and July 2012. ID at 16-17. The administrative judge also found that the appellant failed to establish that the disclosure set forth in his August 2012 complaint to the Office of Special Counsel (OSC) was protected. ID at 16-17. The administrative judge based this finding on the fact that the appellant's August 2012 OSC complaint was unsworn and failed to provide any basis for his claim that another employee had illegally removed a generator from federal property. ID at 16-17. Although the appellant's May 2, 2014 affidavit is sworn, he still failed to explain the basis for this claim. IAF, Tab 18 at 22. Similarly, in his petition for review, the appellant fails to provide a basis for his belief that any wrongdoing occurred. PFR File, Tab 1 at 5. Thus, we agree with the administrative judge's determination that the appellant failed to establish that his August 2012 disclosure was a protected one. Moreover, the appellant's uncorroborated assertion that his supervisor was angry that outsiders had heard about the alleged removal of the generator and that he expressed his view that such a problem should be handled in-house is insufficient to suggest that the agency perceived him as a whistleblower. *Cf. Reed v. Department of Veterans Affairs*, 122 M.S.P.R. 165, ¶¶ 26-27 (2015) (an individual who is perceived as a

whistleblower is still entitled to whistleblower protections, even in the absence of any protected disclosures).

¶12        The administrative judge further found that the appellant failed to show by preponderant evidence that his disclosures were a contributing factor in his removal.  ID at 13-17.  However, by virtue of the proximity in time between the appellant's July 2012 protected disclosure and the beginning of the agency's investigation of him in January 2013, and because the administrative judge found that pertinent agency officials were aware of the appellant's disclosures, ID at 16, we find that the appellant established that his July 2012 disclosure was a contributing factor in the personnel action at issue via the knowledge/timing test, *see, e.g.*, *Wadhwa v. Department of Veterans Affairs*, 110 M.S.P.R. 615, ¶ 13 (6 months is well within the range of time between a disclosure and a personnel action to satisfy the knowledge/timing test for a contributing factor), *aff'd*, 353 F. App'x 435 (Fed. Cir. 2009).

¶13        Nevertheless, for the reasons described below, we agree with the administrative judge and find herein that the agency established by clear and convincing evidence that it would have removed the appellant in the absence of his protected disclosures.  In determining whether the agency has established that it would have taken such an action in the absence of the appellant's whistleblowing activity, the Board will consider the following factors:  (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.  *See Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).  Moreover, evidence only clearly and convincingly supports such a conclusion in the aggregate, considering all the evidence in the record, even that which fairly detracts from that conclusion.  *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

¶14    The disclosure which the administrative judge found was protected and that we, as set forth above, find could have been a contributing factor to the personnel action at issue, involved another employee's alleged failure to certify corrective maintenance that he reportedly performed on an approach lighting system at Hobby Airport before returning it to service.  *See* IAF, Tab 9 at 19-20.  The appellant wrote in his July 2012 OSC complaint that he discovered the failure while performing Post Accident Verification of the lighting system following a March 4, 2011 aircraft accident.  *Id.* at 19.

¶15    Regarding the first *Carr* factor, we agree with the administrative judge that the agency's evidence in support of its action is both detailed and overwhelming. ID at 18.  As remarked above, the appellant's initial inability to explain the events of November 15, 2012, and his subsequently shifting explanations of his actions that day, establishes his intent to mislead the agency about those actions in order to avoid disciplinary action.  We also agree that the weight of the record indicates that the agency officials involved in the personnel action at issue had little motive to retaliate against the appellant because the wrongdoing he alleged did not implicate any of them.  ID at 18.  Nevertheless, an agency official's lack of direct involvement in the matter disclosed is insufficient to remove the possibility of a retaliatory motive or influence in the personnel action at issue. *See Whitmore*, 680 F.3d at 1370-72.  However, the appellant's uncorroborated assertions are also insufficient to establish any motive to retaliate on behalf the agency officials involved.  *Cf. Fellhoelter v. Department of Agriculture*, 568 F.3d 965, 973-74 (Fed. Cir. 2009) (unsubstantiated claims of misconduct are not probative as to the existence of retaliatory motive).  Moreover, in light of the multiple instances of falsification sustained in this matter, the appellant's unsubstantiated allegations of whistleblowing reprisal, even if sworn, *see* IAF, Tab 18 at 20-23, carry little evidentiary weight, *see* ID at 18.  On the third *Carr* factor, we note that, although the record does not address the extent to which the agency has taken similar actions against otherwise similarly-situated employees

who are not whistleblowers, "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis." *Whitmore*, 680 F.3d at 1374.

¶16     Lastly, although the appellant does not specifically challenge them on review, we agree with the administrative judge's analysis and his findings that the penalty of removal is reasonable in light of the charges sustained in this matter and that the agency's action promotes the efficiency of the service.  ID at 18-21.

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You have the right to request further review of this final decision.  There are several options for further review set forth in the paragraphs below.  You may choose only one of these options, and once you elect to pursue one of the avenues of review set forth below, you may be precluded from pursuing any other avenue of review.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims: Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Other Claims: Judicial Review

If you do not want to request review of this final decision concerning your discrimination claims, but you do want to request review of the Board's decision without regard to your discrimination claims, you may request review of this final

decision on the other issues in your appeal by the United States Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices described in 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the United States Court of Appeals for the Federal Circuit or by any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                 _____
                                        William D. Spencer
                                        Clerk of the Board

Washington, D.C.